NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES DISTRICT COUNCIL 711 HEALTH & WELFARE, and VACATION FUND, and FINISHING TRADES INSTITUTE and VINCENT M. LANE**, as Trustee and Fiduciary for DISTRICT COUNCIL 711 HEALTH & WELFARE, and VACATION FUNDS, and FINISHING TRADES INSTITUTE, | Civil Action No. 13-1947 (SDW)(SCM)  **OPINION**  January 20, 2015 |
| Plaintiffs, | |
| v. | |
| **PETRIC & ASSOCIATES, INC.,** and **CONTI ENTERPRISES, INC.,** and **TRAVELERS CASUALTY AND SURETY COMPANY** | |
| Defendants. | |

**WIGENTON**, District Judge.

Before the Court is the Motion of Plaintiffs International Union of Painters and Allied Trades District Council 711 Health & Welfare, Vacation, and Finishing Trades Institute, and Vincent M. Lane, as Trustee and Fiduciary for District Council 711 Health & Welfare, Vacation and Finishing Trades Institute ("Plaintiffs" or "the Funds") to Strike and Dismiss, pursuant to

Federal Rule of Civil Procedure 13(g), the crossclaims asserted by Defendants Petric & Associates, Inc ("Petric"), and Conti Enterprises, Inc. ("Conti") (collectively "Defendants"). This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b).  This Court, having considered the parties' submissions, decides the Motion to Strike or Dismiss without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons stated below, Plaintiffs' Motion is **granted** and the crossclaims of Defendants Petric and Conti are **dismissed without prejudice**.

## I.     FACTUAL AND PROCEDURAL HISTORY[1]

This action involves Defendants' alleged failure to pay delinquent fringe benefit contributions owed to the Union for work performed by its members from approximately January 2012 through September 2012. Plaintiffs are "trust funds established and maintained pursuant to Section 302(c)(5) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §186(c)(5) and employee benefit plans established and maintained pursuant to Section 3(1), (2) and (3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1002(1), (2) and (3) for the purpose of providing health benefits and other benefits to eligible participants." (Third Am. Compl. ¶ 4.)

In or about 2011, Defendant Conti was awarded a construction contract ("Construction Contract") by the New Jersey Turnpike Authority ("NJTA") on a public improvement project (hereinafter "Bridge Deck Reconstruction"). On or about October 17, 2011, Conti entered into a subcontract agreement ("Subcontract") with Defendant Petric to furnish labor and materials for the fulfillment of the Construction Contract. Subsequently, Petric and District Council 711 ("the

---

[1] The facts set forth in this Opinion are taken from the parties' respective submissions.

Union"), beneficiaries of the Funds, entered into a collective bargaining agreement ("CBA") which obligated Petric to remit fringe benefits contributions to the Funds for work performed by the Union on the Bridge Deck Reconstruction. (Third Am. Compl. ¶ 15.)

On May 21, 2014, pursuant to Section 502 of ERISA and Section 301 of LMRA, Plaintiffs filed a six-count Third Amended Complaint against Petric, Conti, and Travelers Casualty and Surety Company ("Travelers"), which issued a contract bond ("Contract Bond") and served as surety to the bond on behalf of Conti. (ECF No. 32.) In Count One of the Complaint, Plaintiffs allege that Petric failed to remit fringe benefit contributions for the period including, but not limited to, January 2012 through September 2012, in violation of 29 U.S.C. §1145. (Third Am. Compl. ¶¶ 15-16.) In Count Two, Plaintiffs contend that as Principal to the Construction Contract, and pursuant to the Contract Bond, Conti is jointly and severally liable to pay the delinquent fringe benefit contributions. (Id. ¶¶ 23-25.)

Counts Three, Four, and Five relate to Plaintiffs' claim that Conti breached a verbal agreement ("Agreement") with the Union, of which Plaintiffs were third-party beneficiaries.[2] (Third Am. Compl. ¶¶ 26-47.) According to the Complaint, in or about March 2012, after three months of lapsed fund contributions, Tom Nestopoulos ("Nestopoulos"), Business Agent of the Union, met with Mark Leibes ("Leibes"), Vice President of Conti, to discuss the contributions owed to the Union. (Id. ¶ 27.) To avoid work stoppage by Union members, Leibes allegedly assured Nestopoulos that Conti would pay the outstanding contributions on Petric's behalf. (Id.) Plaintiffs allege that, in reliance upon the Agreement, Union members continued to work and accrued additional unpaid contributions. (Id. ¶¶ 28-35.)

---

[2] Count Three alleges Breach of Contract, Count Four alleges Quantum Meruit, and Count Five alleges Breach of Implied Covenant of Good Faith and Fair Dealing.

The Sixth and last count of the Complaint alleges that Travelers, as surety on the Contract Bond, is jointly and severally liable for payment of the delinquent contributions. (Third Am. Compl. ¶¶ 48-51.)

As part of Petric's Answer to Plaintiff's Complaint, Petric filed a ten-count cross-complaint alleging nine breach-of-contract claims against Conti relating to the Subcontract Agreement between Petric and Conti, and alleging one claim for recovery under the Contract Bond against Travelers. (Petric Answer with Crossclaims, ECF No. 11, "Petric Crossclaims", ¶¶37-161, 175-296).[3]

In turn, Conti filed a two-count cross-complaint against Petric asserting breach of contract and a claim for indemnity, also pursuant to the Subcontract between Petric and Conti. (Conti Answer with Cross-Claims, ECF No. 24, "Conti Crossclaims", ¶¶ 57-67).

Plaintiffs filed the instant motion to strike or dismiss defendants' crossclaims on the grounds that 1) these claims do not arise from the same transactions underlying Plaintiffs' suit; 2) the unrelated claims are complex and only serve to complicate the adjudication of Plaintiffs' relatively discrete ERISA claims. (Pl. Br. p. 8, 12.) Petric opposes this motion but Conti does not.

## II.     LEGAL STANDARD

Rule 13(g) of the Federal Rules of Civil Procedure, which governs crossclaims, states that "[a] pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim . . . . The crossclaim may include a claim that the coparty is or may be liable to the

---

[3] Specifically, Petric alleged the following cross-claims against Conti: Breach of Contract (Count I); Breach of Rental Contract (Count II); Quantum Meruit (Count IV): Services Performed and Materials and Equipment Provided (Count V); Breach of Covenant of Good Faith and Fair Dealing (Count VI); Conversion (Count VII); Replevin (Count VIII); Wrongful Termination (Count IX); Contract Reformation (Count X). Petric Cross-Claims, ¶¶ 135-161, 175-295.

cross-claimant for all or part of a claim asserted in the action against the cross-claimant." Fed. R. Civ. P. 13(g). "'[T]he general policy behind allowing crossclaims is to avoid multiple suits and to encourage the determination of the entire controversy among the parties before the court with a minimum of procedural steps.'" Colony Ins. Co. v. Kwasnik, Kanowitz & Assocs., P.C., 288 F.R.D. 340, 345 (D.N.J. 2012)(citing C.A. Wright, A. Miller, M.K. Kane, Federal Practice and Procedure, Vol. 6, § 1431 (3d ed.))(internal citations omitted). "Rule 13(g) 'does not authorize the assertion of every claim that might exist between coparties,' and the decision whether to allow a crossclaim is a matter of judicial discretion." Id.

### III.   DISCUSSION

#### A. *Petric's Crossclaims*.

The parties agree that the "logical relationship test" should apply in determining whether Defendants' cross claims stem from the same transaction or occurrence and are thus permissible. See Pl. Br. p. 6, Petric Br. p. 15.  The logical relationship test is commonly used to decide if a claim qualifies as a compulsory counterclaim under Fed. R. Civ. P. 13(a). The Third Circuit has clarified that "a logical relationship between claims exists where separate trials on each of the claims would 'involve a substantial duplication of effort and time by the parties and the courts.' Such a duplication is likely to occur when claims involve the same factual and legal issues, or are offshoots of the same basic controversy between the parties." Transamerica Occidental Life Ins. Co. v. Aviation Office of Am. Inc., 292 F.3d 384, 389-90 (3d Cir. 2002) quoting Xerox Corp. v. SCM Corp., 576 F.2d 1057, 1059 (3d Cir. 1978); see also JSM At Tingley, LLC v. Ford Motor Co., 2011 U.S. Dist. LEXIS 149797, *6 (D.N.J. Dec. 30, 2011).

Plaintiffs contend that the "logical relationship test" compels dismissal of Defendants' crossclaims. Plaintiffs argue that their claims for delinquent fringe benefit contributions factually

diverge from Defendants crossclaims because "it is based on the number of hours [the Union members] worked and whether or not the fringe benefits were paid." Pl. Br. p. 10. They further argue that their ERISA fringe benefit claims arise from the collective bargaining agreement between the Union and Petric as well as the Contract Bond between the Union and Conti, whereas the Defendants' breach of contract crossclaims evolve from the Petric/Conti subcontractor-general contractor relationship. Essentially, according to Plaintiffs, "the mere fact that Union members may have performed some of the work described in the [Subcontract]" is insufficient to find that separate trials would "involve a substantial duplication of effort and time by the parties and the courts." Pl. Br. 9-10.

Conversely, Petric posits that while its crossclaims against Conti arise from the Subcontract Agreement between them, the claims "relate back" to Plaintiffs' delinquent contribution claims because "Petric alleges that Conti is responsible for remitting said contributions owed to the Funds, which is due to Conti's non-payment for work [and] extra work . . . performed under the Subcontract which was in furtherance of the [Construction] Contract with the Union."[4] Petric Br. p. 16. Petric oversimplifies its crossclaims.

Petric's cross-complaint contains over two hundred paragraphs of factual contentions, many of which do not involve the Funds, members of the Union or relate to the payment or non-payment of fringe benefit contributions. In large part, Petric contends that Conti failed to abide by the terms of the Subcontract in a variety of ways including, but not limited to, the following: Failure to compensate Petric for certain additional work outside the scope of the Subcontract that Petric performed at Conti's insistence, and at times, under threats of non-payment (Petric Crossclaims ¶¶ 61-63); failure and refusal to provide, in violation of the Subcontract, written

---

[4] It should also be noted that neither the Funds nor the Union are parties to the Construction Contract, rather, that contract is between Conti and the NJTA.

change orders for some of the additional work Petric was pressed to perform (Id. ¶¶ 65-69); refusal to execute a rental agreement for the use of Petric's equipment or to otherwise provide Petric with the equipment necessary for the completion of the Bridge Deck Reconstruction (Id. ¶¶73-77); failure to reimburse Petric for the cost of hiring an operating engineer Conti's unilateral modification of the plans (Id. ¶¶ 96-99); and lastly, that Conti's unilateral modification of the plans and designs for the project after the Subcontract was executed required an unanticipated amount of costly night work for which Petric was not compensated (Id. ¶¶ 84-88).

Clearly, the proofs that would be required to support Petric's contentions at trial differ in nature and volume from the proofs that would be required to litigate Plaintiffs' claims. Consequently, this Court finds that Petric's crossclaims do not meet the "logical relationship" test. Furthermore, as Plaintiffs point out, if permitted to proceed as part of Plaintiffs' suit, Petric's crossclaims would drastically complicate the adjudication of Plaintiff's comparatively straightforward ERISA claim. Not only would Plaintiffs be required to participate in an unnecessarily lengthy discovery process, but the extensive facts relating to Petric's crossclaims could potentially confuse the factfinder at trial.

Second, it is unclear how Conti's alleged breach of the Subcontract relieves Petric of its legal obligation to pay benefit contributions allegedly owed to the Union pursuant to the collective bargaining agreement. While, if accepted as true, Conti's alleged breach of the Subcontract may have caused Petric severe economic hardship, the breach of an ancillary contract does not provide a legally cognizable defense to an action brought under ERISA to collect delinquent trust fund contributions. As the Third Circuit explained in <u>Agathos v. Starlite Motel</u>, there are only three legally cognizable contract defenses that employers may raise to avoid their obligation to contribute to employee benefit funds under Section 515 of ERISA. 977 F.2d 1500, 1506 (3d Cir.

7

1992). Employers may argue that: "(1) the pension contributions themselves are illegal, see Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 86-88, 102 S. Ct. 851, 861-62, 70 L. Ed. 2d 833 (1982); (2) the collective bargaining agreement is void ab initio, as where there is fraud in the execution, and not merely voidable, as in the case of fraudulent inducement, [Southwest Administrators, Inc. v.] Rozay's Transfer, 791 F.2d [769,] 773-75[(3d Cir. 1986)]; Benson [v. Brower's Moving & Storage, Inc.], 907 F.2d [310,] 314 [(3d Cir. 1990)]; and (3) the employees have voted to decertify the union as its bargaining representative, thus prospectively voiding the union's collective bargaining agreement. Sheet Metal Workers' Int'l Ass'n, Local 206 v. West Coast Sheet Metal Co., 954 F.2d 1506, 1509-10, 1509-10 (9th Cir. 1992)." Id.

Lastly, this Court is mindful that public policy favors simplified trust fund collection litigation. In Central Pa. Teamsters Pension Fund v. McCormick Dray Line Inc., 85 F.3d 1098, 1103 (3d Cir. 1996), the Third Circuit emphasized that "Congress's purpose in enacting Section 515 [of ERISA] was to allow multiemployer welfare funds to rely upon the terms of collective bargaining agreements and plans as written, thus 'permitting trustees of plans to recover delinquent contributions efficaciously, and without regard to issues which might arise under labor-management relations law . . .'" Id. at 1104 (citations omitted). Because Petric's tangentially related crossclaims contravene this statutory goal, they will be dismissed without prejudice.[5]

### B. Conti's Crossclaims

As Conti does not oppose the dismissal of its crossclaims, they are similarly dismissed without prejudice.

---

[5] This Court declines to exercise supplemental jurisdiction over the Defendants' state law breach of contract crossclaims. Also, because Petric and Conti are both citizens of New Jersey, no diversity of citizenship exists.

## IV. CONCLUSION

For the foregoing reasons, this Court **grants** Plaintiffs' motion to strike or dismiss Defendants Petric and Conti's crossclaims.


                                                s/ *Susan D. Wigenton*
                                                **SUSAN D. WIGENTON**
                                                **UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Magistrate Judge Steven C. Mannion